Robert L. Levy (RL-1633)
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666
Attorneys for Plaintiff

**JUDGE CONNER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**06 CV 1184**

- - - - - - - - - - - - - - - - - - - - - x

JEANETTE LOWN,

                       Plaintiff,

       -against-

WACHOVIA CORPORATION,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - x

06 Civ.

COMPLAINT

PLAINTIFF DEMANDS
TRIAL BY JURY

FILED
U.S. DISTRICT COURT
S.D. OF N.Y.
2006 FEB 15 PM 1:53

     Plaintiff Jeanette Lown, by her attorneys, Bantle &

Levy LLP, alleges for her complaint against defendant Wachovia

Corporation as follows:

## NATURE OF THE ACTION

     1.   This is an action for employment discrimination

based on gender and age, in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title

VII") and the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 621 et seq. (the "ADEA"). Plaintiff seeks declaratory

and injunctive relief and damages.

1

## JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e et seq., as amended, 29 U.S.C. § 621 et seq., and 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

3.    Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b)(2) because all of the unlawful acts and omissions giving rise to claims alleged herein were committed within the district of the United States District Court, Southern District of New York.

4.    All conditions precedent to jurisdiction under §706 of Title 7, 42 U.S.C. §2000e-5(f)(3) and §7(d), 29 U.S.C. 626(d), have occurred or been complied with:

     a.    A charge of employment discrimination on the basis of, inter alia, gender and age was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the adverse actions of which plaintiff complains in this action.

     b.    A notification of right to sue was issued by the EEOC on or about November 17, 2005.

     c.    This complaint has been filed within 90 days of plaintiff's receipt of the EEOC's notification of right to sue and less than three years after defendant wilfully engaged in the unlawful action set forth herein.

## PARTIES

5.    Plaintiff Jeanette Lown, is a citizen of the

United States and the State of New York who currently resides at
519 Bridge Street, Hopewell Junction, New York 12533.  At all
times relevant herein, Lown resided in and was a citizen of the
State of New York.

      6.    Lown is a fifty year old woman, born on September
26, 1955.

      7.    From in or about August 1974 through February 2,
2004, Lown was employed at retail banks owned and operated by
defendant Wachovia Corporation and/or Wachovia Corporation's
predecessors in interest ("Wachovia").

      8.    Upon information and belief, at all times
relevant herein, defendant Wachovia was and is a diversified
financial services company licensed to do business within the
State of New York, with its corporate headquarters located in
Charlotte, North Carolina.

      9.    Wachovia operates retail banks throughout the
United States, including within the State of New York.

      10.  Wachovia's predecessors in interest herein
include, without limitation, Mid-Hudson Savings Bank, First
Fidelity Bancorp and First Union Bank.

      11.  At all times relevant herein, Wachovia is and was
an employer engaged in industry affecting commerce and has
employed more than 100 employees within the meaning of Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(b), (g) and

(h).

    12.  At all times relevant herein, Wachovia is and was an employer engaged in industry affecting commerce, as defined in 29 U.S.C. § 630(h) and has employed more than 25 employees. Defendant is an "employer" within the meaning of Section 11(b) of the ADEA, 29 U.S.C. § 630(b).

## STATEMENT OF FACTS

    13.  Prior to her termination on February 2, 2004, Lown was employed for over twenty nine years as a bank employee in a bank owned and operated by Wachovia and its predecessors in interest.

    14.  Wachovia, so named, became Lown's employer as a result of its merger with First Union Bank in or about September 2001.

    15.  Pursuant to the terms of the merger, Wachovia recognized Lown's date of hire as August 5, 1974.

    16.  All of the discriminatory acts set forth herein occurred after the First Union-Wachovia merger.

    17.  Lown first came to be employed by the bank that came to be Wachovia in August 1974, when she was hired by Mid-Hudson Savings Bank ("Mid-Hudson") as a full-time teller shortly after she graduated from high school.

    18.  While employed by Mid-Hudson, Lown was highly regarded for her competence, dedication and professionalism, and

4

based on her strong performance earned promotions to Assistant Branch Manager and Branch Manager.

19.   In or about August 1994, Mid-Hudson was acquired by First Fidelity Bancorp ("First Fidelity").  In or about 1996, First Fidelity merged with First Union Bank ("First Union").

20.   While employed by First Fidelity and First Union, Lown received several sales and service awards, including without limitation, a 1998 award for extraordinary sales performance, a "Top of the Mountain" award in or about February 2000 and a "superior performance" award in September 2001.

21.   While employed by First Fidelity and First Union, Lown also received several merit-based job promotions, ultimately achieving the position of Senior Financial Specialist.

22.   As a financial specialist, Lown's primary responsibility was to acquire customer assets and sell of a variety of financial products on behalf of First Fidelity and First Union, respectively.

23.   Subsequent to the First Union-Wachovia merger, Lown continued to receive recognition for her performance, including without limitation, being recognized for her sales performance in or about November 2001 and receiving an LFS Quarterly Recognition award for strong sales performance on or about May, 15, 2002.

24.   In or about December 2002, Lown's job title was

changed to Licensed Financial Specialist as part of a
restructuring by Wachovia.

25.   Lown served in the position of Licensed Financial
Specialist until her termination by Wachovia on February 2, 2004.

26.   As an Licensed Financial Specialist, Lown's
primary responsibilities continued to be the acquisition of
customer assets and sale of financial products.

27.   During the time she was employed as an Licensed
Financial Specialist by Wachovia, Lown worked at a Wachovia bank
branch located in Poughkeepsie, New York (the "Poughkeepsie
Financial Center") and was supervised by Kathleen Houghtaling.

28.   During the time she supervised Lown, Houghtaling
supervised approximately eighteen Licensed Financial Specialists
who worked in various Wachovia bank branches located in northern
New York and Connecticut.

29.   At all times relevant herein, Licensed Financial
Specialists were evaluated based on their performance in
generating retail and commercial customer deposits, loans and
investment of customer assets, and based on the quality of their
service to Wachovia's customers.

30.   At all times relevant herein, Wachovia maintained
reports comparing the year-to-date and monthly sales performance
of the Licensed Financial Specialists supervised by Houghtaling.

31.   From in or about December 2002 until in or about

November 2003, when Lown was forced to take disability leave due to carpal tunnel syndrome, Lown's annual sales record for deposits, loans and investments generated consistently ranked in the top twenty five percent (25%) to fifty percent (50%) among the Licensed Financial Specialists supervised by Houghtaling.

32.   Despite Lown's strong sales performance relative to the other Licensed Financial Specialists supervised by Houghtaling, and her consistently high marks for customer service, in or about the first quarter of 2003 Houghtaling began to unduly and unfairly criticize Lown's job performance.

33.   Houghtaling's criticism of Lown's performance demonstrated an age bias by focusing on Lown's alleged "old-fashioned" approach to financial sales and her purported "lack of energy" in her approach to sales.

34.   On or about August 18, 2003, Houghtaling placed Lown on a written performance warning pursuant to Wachovia's progressive discipline policy.

35.   The purported basis for the written warning was inadequate sales performance.

36.   At or about the time Lown was put on written warning by Houghtaling, Lown's annual sales record for deposits, loans and investments generated continued to rank in the top twenty five percent (25%) to fifty percent (50%) among the Licensed Financial Specialists supervised by Houghtaling.

7

37.   At or about the time she was put on written warning by Houghtaling, Lown was outperforming Thomas Conley, a younger, male Licensed Financial Specialist working in the Poughkeepsie Financial Center, in generating deposits, loans and investment sales.

38.   Upon information and belief, at or about the time she was put on written warning by Houghtaling, Lown was outperforming the majority of the other Licensed Financial Specialists supervised by Houghtaling in many of the sales categories used by Wachovia to track deposits, loans and investment generated by Licensed Financial Specialists.

39.   Upon information and belief, Conley was not placed on written warning by Houghtaling in or about August 2003 despite lagging Lown in virtually every sales category.

40.   Upon information and belief, none of the male Licensed Financial Specialists and/or younger Licensed Financial Specialists being outperformed by Lown in Wachovia's sales categories were placed on written warning by Houghtaling at the time Lown was placed on progressive discipline.

41.   As of late October, 2003, Lown ranked between second and eighth among the approximately eighteen Licensed Financial Specialist supervised by Houghtaling in validated deposits and loans generated in 2003.

42.   Despite Lown's solid sales performance relative to

the other Licensed Financial Specialists supervised by Houghtaling, on or about November 13, 2003 Houghtaling placed Lown on probation purportedly for poor sales performance.

43.   Shortly after meeting with Lown to advise her that she was being put on probation, Houghtaling remarked to a male employee at the Poughkeepsie Financial Center, in words or substance, that soon this branch would have "an all male team" and it would then "kick butt".

44.   Upon information and belief, as of the time she was placed on probation by Houghtaling, Lown was still out-performing Conley in 2003 sales generated in deposits, loans and investments.

45.   Upon information and belief, Conley was not subjected to progressive discipline of any kind in or about November 2003.

46.   Upon information and belief, as of the time she was placed on probation by Houghtaling, Lown was still out-performing the majority of Licensed Financial Specialists supervised by Houghtaling in many of the sales categories tracked by Wachovia.

47.   Upon information and belief, younger Licensed Financial Specialists and male Licensed Financial Specialists being out-performed by Lown were not subjected to progressive discipline of any kind by Houghtaling in or about November 2003.

48.  Lown was forced to take short term disability leave from on or about November 18, 2003 through on or about December 15, 2003 due to a previously scheduled surgical procedure for her carpal tunnel syndrome.

49.  Upon her return to work after her short term disability leave, Lown was afforded little opportunity by Houghtaling to reestablish a positive sales record.

50.  On February 2, 2004, Houghtaling terminated Lown's employment purportedly for poor sales performance.

51.  Upon information and belief, subsequent to terminating Lown, Houghtaling replaced Lown with Phil Bronzi, a white male who was approximately twenty-five years old at the time he assumed Lown's former position.

52.  As evidenced by Houghtaling's comments to Lown and to at least one other employee at the Poughkeepsie Financial Center, and Houghtaling's differential treatment of Lown and the male and younger Licensed Financial Specialists she supervised, Lown's termination was motivated by discriminatory bias based on age and gender.

53.  As a consequence of the foregoing, Defendant has discriminated against Lown in the terms and conditions of her employment due to Lown's age and gender and, thereby, has denied Lown continuing opportunities for employment, recognition, increased compensation and other benefits and perquisites of

employment at Wachovia.

54.  As a result of Defendant's discriminatory termination of Lown's employment, Lown has suffered a loss of income, professional stature and benefits.

55.  As a result of Defendant's discriminatory termination of Lown's employment, Lown has sustained serious pain and suffering, and severe mental and emotional harm and distress.

56.  The aforesaid acts and conduct by Defendant, its agents and employees, were performed willfully, intentionally, maliciously and with reckless indifference to Lown's protected rights.

## COUNT I

57.  Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 58 as if fully set forth herein.

58.  As a result of Defendant's aforesaid acts, Defendant has discriminated against plaintiff on account of her gender in violation of Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e-2(a).

59.  As a result of Defendant's discriminatory and adverse acts, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish,

11

humiliation, loss of enjoyment of life and damage to reputation and career.

### COUNT II

60. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 61 as if fully set forth herein.

61. As a result of Defendant's aforesaid acts, Defendant has discriminated against plaintiff on account of her age in violation of the ADEA, 29 U.S.C. § 631(a).

62. As a result of Defendant's discriminatory and adverse acts, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

**WHEREFORE,** Plaintiff respectfully requests this Court to:

(1) Issue a declaratory judgment that defendant's acts, policies, practices and procedures complained of herein violated plaintiff's rights as secured by Title VII and the ADEA;

(2) Issue a permanent injunction ordering plaintiff reinstated to the highest position to which she was and would be entitled with salary, benefits, tenure, job responsibilities and

12

other terms of employment commensurate with such position;

(3)  Order defendant to make plaintiff whole by providing: (i) backpay with interest based on plaintiff's appropriate compensation had she not been discriminated against; (ii) front-pay; (iii) reimbursement for lost pension, social security, experience, training opportunities and other benefits in an amount to be shown at trial;

(4)  Grant plaintiff compensatory damages for her emotional pain, suffering, inconvenience, mental anguish, humiliation and loss of reputation in an amount not less than $1,000,000;

(5)  Grant plaintiff punitive damages in an amount not less than $2,000,000;

(6)  Grant plaintiff her attorneys fees, costs and disbursements; and

(7)  Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.

Dated:      New York, New York
            February 13, 2006

                                    BANTLE & LEVY LLP

                                    By: _____
                                        Robert L. Levy (RL-1673)

                                    817 Broadway
                                    New York, New York 10003
                                    (212) 228-9666
                                    Attorneys for Plaintiff

14